IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HOPE BOLDEN, | ] | |
| | ] | |
| Plaintiff, | ] | Jury Trial Demanded |
| | ] | |
| v. | ] | Civil Action No. 2:08-CV-21- |
| | ] | |
| MICKI BETH STILLER, and | ] | |
| MICKI BETH STILLER, P.C., | ] | |
| | ] | |
| Defendants. | ] | |



## COMPLAINT

### PARTIES

1.      Plaintiff Hope Bolden (hereafter referred to as "Bolden") is a resident citizen of Banks, Alabama, in Pike County, Alabama, and is over nineteen years of age.

2.      Defendant Micki Beth Stiller, P.C., (hereafter referred to as "M. B. Stiller P.C.") is a law firm organized as a professional corporation under Alabama law, with its principal place of business in Montgomery, Alabama. Defendant M. B. Stiller, P.C. also has offices in Opelika and Ozark, Alabama.

3.      Defendant Micki Beth Stiller (hereafter referred to as "Stiller") is an individual over nineteen years of age, and is employed by Defendant M. B. Stiller, P.C., and/or is the sole owner of M. B. Stiller, P.C.

### JURISDICTION

4.      This Court has jurisdiction over this matter pursuant 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1347.

**COUNT ONE**

5.   Plaintiff Bolden was hired by Defendant M. B. Stiller, P.C. on or about August 25, 2003 as a paralegal. Bolden was 25 years of age at that time. Bolden's supervisor was Defendant Stiller, and Bolden was required to work with Stiller on a day-to-day basis.

6.   At the beginning of her employment, Bolden's regular work hours were 8:-30 a.m. - 5:30 p.m., Monday through Friday each week, with an hour for a meal break, amounting to forty (40) hours each week. Defendants' office manager regularly kept a record of all employees' work hours and time, and subsequently the time was recorded by use of a time clock on one of the computers in the office. The bookkeeper also kept records of all accrued time or leave of the employees.

7.   During Bolden's employment with the Defendants, Defendants regularly required Bolden to work on the weekends and after regular work hours. This work was in addition to Bolden's regular work hours of forty (40) hours per week, and was performed by Bolden at the request of the Defendants and with their full knowledge. Defendants maintained a record of all hours worked by Bolden. Contrary to § 207 of the FLSA, however, Defendants did not pay any overtime wages to Bolden at a rate of one and one-half times her regular rate of pay. Defendants told Bolden that she was only allowed to accrue leave (time off from work) in an amount equal to the overtime worked. The time credited for work over 40 hours per week was also never credited as one and one half times Bolden's regular rate of pay. Instead, Defendants only gave Bolden credit in the form of leave on a straight-time basis. Bolden used some of her accrued leave during her employment with Defendants, but Defendants also refused to allow Bolden to use all of her accrued leave, and further refused to pay Bolden overtime wages at a rate of one and one-half times her regular rate of pay.

8. In approximately 2006, Defendants changed Bolden's work schedule so that Bolden was allowed to work from home one day each week. Bolden had a computer at her home in Pike County and was able to work on fee petitions for Defendants' social security cases from her home. Bolden also worked in Defendants' offices in Opelika and Ozark performing training and other work duties when she was not in the Montgomery office. Defendant Stiller regularly contacted Bolden by telephone on the weekends, and Bolden continued to work on weekends and after hours for the Defendants. Bolden was regularly working in excess of forty (40) hours per week. Bolden performed this work at the request of the Defendants and with their full knowledge. Defendants kept a record of Bolden's hours, but did not pay her overtime wages at a rate of one and one-half times her regular rate of pay. Bolden was only allowed to accrue leave on a straight time basis for her work over 40 hours per week.

9. In approximately June of 2007, Defendants directed Bolden to provide verification that she had worked the hours at home over approximately a six month period. After significant effort on her own personal time, Bolden was able to compile numerous work-related documents in support of her hours, and provided them to the Defendants. Defendants claimed that Bolden had not justified 79 of her hours over the six month period, and wrongfully reduced Bolden's accrued sick leave by 79 hours.

10. In June, Bolden complained to the Defendants that their actions were unlawful. Defendant Stiller responded that it was her business and that she could do as she pleased. Defendant Stiller further acknowledged that she knew that these actions were unlawful, but she did not care.

11. Immediately after Bolden complained of unlawful actions by the Defendants, (1) Stiller began regularly questioning Bolden's work hours and began making Bolden write down

descriptions of all of her work performed at home; (2) Stiller also began making Bolden turn in written descriptions of all work performed in the office when Stiller was not there, although no other employee was required to do this; (3) Stiller also began reviewing files that Bolden had worked on to see if Bolden had performed all her work, although Stiller did not do this with respect to any other employee; (4) Stiller also threatened she would not allow Bolden to work at home any longer, and whenever Bolden did work at home, Stiller complained about it and berated Bolden; (5) Stiller also wrote off all of Bolden's accrued comp time and sick leave for the last three years and Bolden's two personal leave days for 2007; (6) Stiller also called Bolden at home and screamed and cussed at her on Bolden's answering machine. Defendants also refused to give Bolden a cost of living raise in approximately October of 2007, although other employees received cost of living raises. Defendants also refused to give Bolden an annual raise in the fall of 2007, although Bolden had gotten annual raises every previous year of her employment with Defendants.

12.  Stiller had also previously given Bolden permission to take a week off for a vacation in July of 2007. After Bolden complained about unlawful conduct in June of 2007, Stiller refused to allow Bolden to take this week in July for a planned, family vacation. Bolden therefore felt she had no other recourse than to tell Stiller she needed to be off for medial reasons so she could take the vacation with her family. Stiller agreed to allow Bolden the week off, but when Bolden returned from vacation, Stiller asked Bolden to provide a written doctor's excuse. Bolden provided Stiller with a letter, but this letter was actually written by Bolden. Bolden felt compelled to do this in order to use a week of her accrued leave for her planned, family vacation.

13. In December of 2007, Defendants allegedly learned that Bolden had gone on vacation in July of 2007, and that she had been off work for medical reasons as she claimed. On December 10, 2007, Defendants terminated Bolden's employment. Defendants also refused to give Bolden her last paycheck and a check for mileage Bolden incurred as a result of work-related duties. Defendants further refused to compensate Bolden for her remaining vacation time.

14. Defendants violated 29 U.S.C. § 207 the FLSA by failing and refusing to compensate Bolden for work performed in excess of 40 hours per week. Defendants were aware that Bolden was working in excess of 40 hours per week and/or suffered or permitted Bolden to work in excess of 40 hours per week without appropriate compensation.

15. Defendants knew the above actions were unlawful and thus committed willful violations of the FLSA.

WHEREFORE, THE PREMISES CONSIDERED, Bolden demands compensatory damages, including all unpaid overtime compensation to which she is entitled, interest, liquidated damages, costs, attorney's fees, and any other relief to which she may be entitled.

### COUNT TWO

16. Bolden incorporates herein the foregoing allegations in paragraphs 1 through 15 as if the same were set out here in full.

17. From August of 2003 through December of 2007, Defendants refused to pay overtime wages to Bolden for all work performed in excess of 40 hours per week.

18. Bolden complained about Defendants' unlawful actions in June of 2007. Immediately after she complained, Defendants retaliated against Bolden by increasingly

questioning the hours she worked, making her perform additional duties to justify her hours, scrutinizing Bolden's work, berating Bolden, calling Bolden at home and leaving nasty messages on the answering machine, writing off all of Bolden's accrued overtime/comp time, sick leave and personal leave days, and by refusing to allow Bolden to take a planned, family vacation in July of 2007 with her husband and two children. Defendants also retaliated against Bolden in the fall of 2007 by refusing to give her a cost of living raise and an annual raise in salary. Defendants' actions affected Bolden financially and further caused Bolden to suffer humiliation and extreme emotional distress. Defendants eventually terminated Bolden in December of 2007 in retaliation for her complaints about their unlawful actions, including their unlawful refusal to allow Bolden to use her accrued leave and their unlawful reduction of Bolden's leave and overtime hours already worked. Any reasonable employee in Bolden's position would have found the acts of the Defendants to be materially adverse, and such acts of the Defendants would have dissuaded a reasonable employee from complaining about unlawful activity by the Defendants.

19.     Defendants' actions constitute unlawful retaliation in violation of 29 U.S.C. § 215(a)(3).

WHEREFORE, THE PREMISES CONSIDERED, Bolden demands compensatory damages, including all unpaid overtime compensation, interest, liquidated and/or punitive damages, damages for mental anguish, attorney's fees, and any other relief to which she may be entitled.

**COUNT THREE**

20. Bolden incorporates herein the allegations in paragraphs 1 through 19 as if the same were set out here in full.

21. On a regular basis during her employment with the Defendants, Bolden was subjected to unwelcome sexual harassment and unwelcome touching and other conduct by Defendants. When Bolden began her employment with the Defendants, Defendant Stiller stated that she was glad Bolden was young and pretty, and not fat like previous employees. Defendant Stiller also gave Bolden a revealing, black halter top for a Christmas present in 2003, and told Bolden that she should wear it at the office.

22. In August of 2006, Stiller also told Bolden that Bolden had to go with her to an art show in Atlanta from Thursday - Sunday. Stiller bought and sold art on a regular basis and told Bolden that she would be paid for her work at the art show. Stiller also told Bolden to wear sexy, low-cut clothing to the art show because "sex sells" art. Bolden refused to wear this type of clothing. Stiller also reserved one hotel room for Bolden and Stiller, but Bolden got her own hotel room.

23. On a regular basis throughout Bolden's employment with the Defendants, Defendant Stiller also made comments to Bolden about her figure and certain parts of Bolden's body. Specifically, Stiller told Bolden that she had "perky breasts" and a "perky butt." Defendant Stiller also told Bolden that she liked Bolden's "round butt." Defendant Stiller further asked Bolden if she was ever called "big booty." Frequently throughout Bolden's employment, Defendant Stiller also stared at Bolden's breasts and buttocks which made Bolden uncomfortable. At the office Christmas party at Stiller's house in 2005, Stiller pointed to a wooden statue of a nude woman and told a group of employees (including Bolden) that Bolden's breasts were like the "perky boobs" of the statue.

24. Defendant Stiller also made additional inappropriate sexual comments to Bolden that made Bolden extremely uncomfortable. Specifically, in 2004, Stiller told Bolden that she was lonely and wanted someone to lay in bed with her. Stiller then asked Bolden if she would come over to her house. Bolden refused. Throughout Bolden's employment, Stiller also questioned Bolden about Bolden's sexual relations with her husband and the number and frequency of the sexual relations. Stiller also openly talked about sex and her sexual experiences in front of Bolden which made Bolden extremely uncomfortable. In the summer of 2007, Stiller had plans to go on a cruise. Defendant Stiller told Bolden that she liked Bolden's turquoise blouse and that she wanted to borrow it for the cruise. When Bolden told Stiller she could borrow the blouse, Stiller said that she really wanted to borrow Bolden's breasts because "I could pick up more women if I had your breasts."

25. Defendant Stiller also grabbed Bolden's buttocks approximately 10-15 times during Bolden's employment with the Defendants. Throughout Bolden's employment with Defendants, Defendant Stiller also brushed past Bolden so that she could touch Bolden's breasts. On March 17, 2006, Defendant Stiller approached Bolden from behind and pulled the waistband of Bolden's skirt out and slipped her hand down Bolden's skirt touching Bolden's buttocks. Stiller then announced to the other employees in the office that Bolden was wearing a thong. In November of 2007, Stiller also approached Bolden and asked Bolden to research an issue regarding obesity. Bolden replied that she did not have an obesity issue. Stiller then grabbed Bolden's buttocks and said that she agreed. Bolden immediately knocked Stiller's hand away and told Stiller not to touch her. On December 10, 2007, Bolden's employment was terminated.

26. Stiller's extensive, egregious inquiries into Bolden's sex life, coupled with intrusive and coercive sexual comments and unauthorized grabbing and touching amounted to a wrongful intrusion into Bolden's private activities sufficient to cause Bolden mental suffering, shame and humiliation.

27. Defendant Stiller's acts were committed in the line and scope of her employment with Defendant M. B. Stiller, P.C.; were in furtherance of the business of her employer; or Defendant M. B. Stiller, P.C., participated in, authorized or ratified said acts of Defendant Stiller.

WHEREFORE, THE PREMISES CONSIDERED, Bolden demands compensatory damages and punitive damages in an amount to be determined by a jury, costs, and any other relief to which she may be entitled.

## COUNT FOUR

28. Bolden incorporates herein the allegations in paragraphs 1 through 27 as if the same were set out here in full.

29. Throughout Bolden's employment with Defendants, Defendants touched/grabbed Bolden's buttocks and breasts on numerous occasions, made extensive inquires into Bolden's sexual relations with her husband, and also talked openly about sex and sexual experiences in front of Bolden. On a regular basis, Defendants further made inappropriate comments about Bolden's body.

30. Stiller's acts constitute egregious sexual harassment committed intentionally and/or recklessly by Stiller. Such acts were extreme and outrageous and caused Bolden to suffer emotional distress so severe that no reasonable person could be expected to endure it.

31. Defendant Stiller's acts were committed in the line and scope of her employment with Defendant M. B. Stiller, P.C.; were in furtherance of the business of her employer; or Defendant M. B. Stiller, P.C., participated in, authorized or ratified said acts of Defendant Stiller.

WHEREFORE, THE PREMISES CONSIDERED, Bolden demands compensatory damages and punitive damages in an amount to be determined by a jury, costs, and any other relief to which she may be entitled.

## COUNT FIVE

32. Bolden incorporates herein the allegations in paragraphs 1 through 31 as if the same were set out here in full.

33. On a regular basis throughout Bolden's employment, Stiller stared inappropriately at Bolden's breasts and buttocks. Defendant Stiller grabbed Bolden's buttocks approximately 10-15 times during Bolden's employment with the Defendants. At various other times during Bolden's employment with the Defendants, Stiller brushed past Bolden touching Bolden's breasts with her body or arm. Stiller intended to touch Bolden on each of these occasions, and the touching was done in a harmful or an offensive manner by Stiller, thus constituting assault and/or battery by Defendant Stiller.

34. Defendant Stiller's acts were committed in the line and scope of her employment with Defendant M. B. Stiller, P.C.; were in furtherance of the business of her employer; and/or, Defendant M. B. Stiller, P.C., participated in, authorized and ratified said acts.

35. Defendants' actions caused Bolden to suffer extreme emotional distress, shame and humiliation.

WHEREFORE, THE PREMISES CONSIDERED, Bolden demands compensatory damages and punitive damages in an amount to be determined by a jury, costs and any other relief to which she may be entitled.

*[signature]*
Thomas G. Mancuso (ASB-6179-O53T)
Constance C. Walker (ASB-5510-L66C)
Attorneys for Plaintiff Hope Bolden

**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & GALLION, LLC**
Post Office Box 4660
Montgomery, Alabama 36103-4660
334-265-8573
334-264-7945 Fax

### PLAINTIFF DEMANDS A TRIAL BY JURY

Defendants may be served at the following address:

Micki Beth Stiller
Micki Beth Stiller, P.C.
Post Office Box 1071
225 S. Decatur Street
Montgomery, Alabama 36104

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602003136
Cashier ID: christin
Transaction Date: 01/08/2008
Payer Name: HASKELL SLAUGHTER YOUNG
------------------------------------
CIVIL FILING FEE
 For: HASKELL SLAUGHTER YOUNG
 Case/Party: D-ALM-2-08-CV-000021-001
 Amount:        $350.00
------------------------------------
CHECK
 Remitter: HASKELL SLAUGHTER
 Check/Money Order Num: 005364
 Amt Tendered: $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00
```